Richard ORDONEZ, Appellant,

v.

The STATE of Texas, Appellee.

No. 13–90–089–CR.

Court of Appeals of Texas, Corpus Christi.

March 14, 1991.

Rehearing Overruled April 18, 1991.

David Ross Brown, Victoria, for appellant.

George J. Filley, III, Dist. Atty., Victoria, for appellee.

Before NYE, C.J., and BENAVIDES and HINOJOSA, JJ.

## OPINION

NYE, Chief Justice.

A jury convicted appellant, Richard Ordonez, of the offense of deadly assault on an employee of the Texas Board of Pardons and Paroles. The jury also found the allegations of two prior felony convictions were true and sentenced appellant to life

imprisonment. We affirm the trial court's judgment.

By two points, appellant complains that the evidence was insufficient to support findings that appellant used a deadly weapon and that he caused the victim serious bodily injury, as alleged in the indictment. In reviewing the sufficiency of the evidence, an appellate court views the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Butler v. State*, 769 S.W.2d 234, 239 (Tex.Crim.App.1989); *Houston v. State*, 663 S.W.2d 455, 456 (Tex.Crim.App. 1984); *Arguijo v. State*, 738 S.W.2d 367, 369 (Tex.App.—Corpus Christi 1987, no pet.).

In May, 1989, the Texas Department of Criminal Justice, Institutional Division (TDC), paroled appellant, who subsequently established residence in Victoria. Cynthia Gutierrez, responsible for supervising certain parolees in Victoria County, was his assigned parole officer. Appellant knew that Gutierrez was his parole officer.

Appellant's parole rules required strict supervision, which included three mandatory official contacts per month with Gutierrez. One of these required contacts was for Gutierrez to make a scheduled "home visit," when she called on appellant while he was at his residence. Each month for four months, Gutierrez paid an official home visit to appellant's residence.

On September 18, 1989, Gutierrez officially visited appellant at his residence. Appellant indicated to Gutierrez that he wished to discuss recent bad conduct which probably would affect his parole status. Gutierrez entered the apartment and began their interview at the dining room table.

During the interview, appellant's brother's mother-in-law entered the apartment. While the mother-in-law spoke briefly with appellant, Gutierrez busied herself reading appellant's rejection letters for financial assistance from the Social Security office.

When the woman left, appellant closed the front door, crossed the apartment and entered a bedroom. The next thing Gutierrez knew, appellant was hitting her with a large wooden club or stick.

Gutierrez tried to reason with appellant. He halted his assault long enough to tell Gutierrez that she "was going to do what he told me to do or he was just going to take care of me then and there." He instructed her to go to the apartment's back bedroom and remove her clothing. Gutierrez went into the bedroom but when she refused to disrobe, appellant resumed beating her about the head, neck and body with the club. Gutierrez defended herself by throwing a lamp at appellant and fighting for possession of the club. Their violent struggle took them from the bedroom to the bathroom to the living room. Gutierrez eventually escaped after temporarily immobilizing appellant, and sought protection in the apartment manager's office.

Dr. Sage, an ear, nose and throat and facial surgery specialist, treated Gutierrez for injuries sustained in the assault. He testified that Gutierrez suffered extensive trauma to the head, face and body. The facial bones surrounding the left orbit were fractured. This fracture caused double vision and immovability of the left eye. The double vision improved although, without surgery, Gutierrez would permanently suffer double vision on upward gaze.

Dr. Sage stated that the fracture also injured the facial nerves emerging immediately below the left eye. This injury manifested itself by severe pain in her upper jaw and was irreparable. Gutierrez would either have to learn to live a lifetime of severe pain or undergo a nerve block, resulting in permanent numbness to her upper left jaw area. Dr. Sage characterized her injuries as permanent and characterized the club as an instrument which could cause death or serious bodily injury.

Dr. Sage testified that Gutierrez spent several extra days in the hospital because she was terrified that she might encounter

appellant and that he might kill her. Her fear continued after discharge. Dr. Sage eventually referred her to a psychiatrist because her fear caused her to suffer nightmares and sleepless nights.

Sgt. Burney had twenty-three years' experience with the Victoria Police Department (VPD). He investigated the scene of the offense and visited Gutierrez while she was in the hospital. He found a wooden club inside appellant's apartment that had a long black hair embedded in it. Gutierrez had long black hair. He stated that he was of the opinion that the wooden stick he found was an instrument capable of causing serious bodily injury and death. Gutierrez testified that this same wooden club presented for her identification was the instrument which appellant used to assault and injure her.

A person commits an offense if with a deadly weapon, he intentionally or knowingly causes serious bodily injury to a member or employee of the Board of Pardons and Paroles, when he knows or has been informed that the person assaulted is such a member or employee and while that person is acting in the lawful discharge of an official duty. Tex.Penal Code Ann. § 22.03(a)(1)(A) (Vernon Supp.1991). "Serious bodily injury" means bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or **protracted loss or impairment of the function of any bodily member or organ.** Tex.Penal Code Ann. § 1.07(a)(34) (Vernon 1974) (emphasis added).

The evidence in the record is sufficient for the jury to find that appellant used a deadly weapon to cause Gutierrez serious bodily injury. Points one and three are overruled.

■ Appellant's fourth point of error asserts that the trial court erred when it admitted evidence after the supporting witnesses had left the stand and when it allowed an identification of that evidence to be reflected in the record subsequent to those witnesses leaving the stand.

At trial, Gutierrez identified the wooden club presented to her as the weapon appellant used to assault her. Sgt. Burney individually identified eight photographs of Gutierrez' wounds as photographs taken in his presence. He stated that each photo was a fair and accurate representation of the wounds depicted. Sgt. Burney also identified the club presented to him as the weapon he found at appellant's apartment immediately after the offense occurred. Appellant did not object to the identification or authentication of this evidence by Sgt. Burney or Gutierrez.

After all witnesses had testified and before the State rested its case-in-chief, the State tendered the photographs and the club into evidence. Appellant objected that the photographs should not be admitted because they were offered solely to inflame the jury's sensibilities and were not probative evidence and, further, that the photos "were not offered through any witness on the stand, but offered afterward." Appellant objected that the club was not offered into evidence at the proper time with the witness and, therefore, its admission was improper. The objections were overruled.

The physical exhibits were properly identified and authenticated by witnesses during trial without appellant's objection. *See* Tex.R.Crim.Evid. 901(a). The court did not err when it subsequently admitted those exhibits into evidence even though the witnesses had left the stand. Point four is overruled.

■ Appellant asserts that the trial court erred during the punishment phase by admitting two penitentiary packets ("pen packs") into evidence. Examination of the two pen packs show that they were properly certified by the Record Clerk of the TDC, the Presiding Judge of the County Court of Walker County, the Walker County Clerk, and the clerk of the District Court for Victoria County, where appellant was convicted of both prior offenses. These certifications make the pen packs self-authenticating and thus, admissible

without extrinsic evidence. Tex.R.Crim. Evid. 902(4). Point five is overruled.

■ Appellant asserts in his sixth point of error that the trial court erred when it admitted portions of a pen pack showing details of a prior offense. We disagree.

The pen packets referred to appellant's conviction for forgery and for three robberies. The robberies packet contained information that for one offense, appellant was originally charged with aggravated robbery with a deadly weapon. Details of this offense were not presented during the punishment phase. Appellant argues that, during closing arguments, the State improperly pointed out that the packet contained three robbery convictions.

The State cannot expose to the jury the details of appellant's prior convictions. *See Stevens v. State,* 671 S.W.2d 517, 522 (Tex. Crim.App.1984); *Villalobos v. State,* 756 S.W.2d 847, 851 (Tex.App.—Corpus Christi 1988, no pet.). The State did not add any details of the underlying offense. The jury's own examination of the robberies packet evidence would reveal the same information which the State discussed in closing argument. We find no error. Point six is overruled.

■ By his second point of error, appellant asserts that there was insufficient evidence of two prior felony convictions to enhance punishment. Specifically, appellant argues that the copy of the Judgment and Sentence on Plea of Guilty contained in the forgery packet was not certified by the District Court clerk; therefore, it was not a self-authenticating document.

Examination of the record pertinent to the State's offer of exhibit number 12, the forgery pen pack, into evidence reveals that appellant objected only that "the proper predicate for authentication has not been made by the State" and that the packet was hearsay and subject to the Best Evidence Rule. Appellant's failure to object in a timely and specific manner waived any error. *See Little v. State,* 758 S.W.2d 551,

563 (Tex.Crim.App.1988); *Vela v. State,* 771 S.W.2d 659, 662 (Tex.App.—Corpus Christi 1989, pet. ref'd); *Dill v. State,* 697 S.W.2d 702, 708–09 (Tex.App.—Corpus Christi 1985, pet. ref'd). Point two is overruled.

■ Appellant's eighth point of error asserts that the trial court erred when it placed the possible sentencing verdicts favorable to appellant at the end of the jury charge. He argues that such a configuration unduly prejudiced him in the jury's assessment of punishment.

Verdict questions one through seven would assess appellant's punishment as life imprisonment or life imprisonment with a fine. Verdict questions eight through fourteen would assess punishment as a term of years, from five to ninety-nine years' imprisonment, or a term of years with a fine. A large term of years assessed as punishment would be less favorable than life imprisonment. Additionally, the verdict questions regarding the jury's findings for the enhancement paragraphs were dispersed throughout the charge. We find no error. Point eight is overruled.

■ Appellant's seventh point of error asserts that he received ineffective assistance of counsel during trial. His brief indicates specific portions of the record, allegedly illustrating that counsel's representation was ineffective for both the guilt-innocence and punishment phases. Appellant suggests that had counsel's assistance been effective, the sentence would have been less severe.

Appellant asserts that counsel failed to follow appellant's wish that his brother and his Alcoholics Anonymous (AA) sponsor testify on his behalf during the guilt-innocence phase of the trial. At the hearing for appellant's motion for new trial, appellant's brother testified that he would have told the jury that the wooden club exhibited was broken before the assault took place. Appellant's AA sponsor stated that he would have testified that appellant was making progress in trying to remain sober.

He also complains that his attorney did not cross-examine the victim. Appellant argues that counsel could have successfully impeached her with facts regarding where the weapon was used and where it was found.

The proper standard by which we measure the adequacy of representation by counsel at the guilt-innocence stage of trial is stated in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *Hernandez v. State,* 726 S.W.2d 53, 57 (Tex.Crim.App.1986); *Madrigal Rodriguez v. State,* 749 S.W.2d 576, 580–81 (Tex.App.—Corpus Christi 1988, pet. ref'd). The *Strickland* test requires a two-pronged analysis: (1) did the attorney's representation fall below an objective standard of reasonableness under prevailing professional norms; and, if so, (2) was there a reasonable probability that, but for counsel's unprofessional errors, the trial result would have been different. A "reasonable probability" is defined as "a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068. Furthermore, effective assistance of counsel does not mean errorless counsel. *Hernandez,* 726 S.W.2d at 58; *Ex parte Bratchett,* 513 S.W.2d 851, 853 (Tex.Crim.App.1974); *Arredondo v. State,* 694 S.W.2d 378, 381 (Tex.App.—Corpus Christi 1985, pet. ref'd). Whether counsel provides a defendant adequate assistance is to be judged by the totality of the representation as of the time of the trial representation rather than analyzing isolated acts or omissions through hindsight. *Wilkerson v. State,* 726 S.W.2d 542, 548 (Tex.Crim.App.1986).

Here, appellant's counsel filed appropriate pretrial motions to protect appellant's rights, sought favorable rulings during trial, cross-examined all the State's witnesses except the victim, exhibited a thorough knowledge of the facts and law surrounding this case, and actively sought to protect appellant's rights and advocate his cause. We have reviewed the entire record and find that appellant has received adequate representation during the guilt-innocence phase of his trial. There is no reasonable probability that the result would have been different but for the alleged unprofessional conduct of trial counsel. Point seven is overruled.

The trial court's judgment is AFFIRMED.