**Gregory FUENTES, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. C14–92–00198–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

May 28, 1992.

James M. Leitner, Houston, for appellant.

Julie Klibert, Houston, for appellee.

Before J. CURTISS BROWN, SEARS and ELLIS, JJ.

## OPINION

ELLIS, Justice.

Appellant, Gregory Fuentes, appeals his judgment of conviction for the offense of attempted murder. TEX.PENAL CODE ANN.

§ 19.02 (Vernon 1992) and § 15.01 (Vernon Supp.1992). The jury rejected appellant's not guilty plea and the Court assessed punishment at eighteen (18) years confinement in the Institutional Division of the Texas Department of Criminal Justice. We affirm.

Appellant brings four points of error on appeal:

1) The Court erred in failing to allow appellant to establish the prior relationship of the parties to this offense through the witness Eugene Garza.

2) The Court erred in denying appellant the right to explain the prior relationship between himself and the complainant.

3) The Court erred in failing to allow appellant to explain to the jury the facts of his prior impeachable offense.

4) Appellant was denied effective assistance of counsel when counsel allowed, without objection, the State to state as a matter of fact that the weapon used by appellant to commit the offense was a stolen weapon.

The relevant facts are as follows: October 24, 1990 appellant shot the complainant, Epifanio Oliva in the chest. Several witnesses testified that a group of friends were outside talking. Appellant drove up to where the group was standing, but remained in his truck. A short time later Mr. Oliva was dropped off by someone else. Oliva was carrying a Whataburger bag and a twelve pack of beer which he placed on the back of someone's car.

Oliva approached the driver's side of appellant's truck. After Oliva approached appellant's truck where appellant was still seated inside, the witnesses heard arguing, but could not tell the nature of the argument. The witnesses then heard a gunshot. When the witnesses turned around, they observed Oliva fall to the ground and then get up and run. Oliva then fell again, got up and began running again. Appellant then got out of his car and fired two to three more shots. He then got back in his truck and drove away.

Linda Silva testified that she knew both Oliva and appellant. She testified that her back was turned when she heard the first gunshot. Ms. Silva further testified that appellant then got out of his truck and fired several shots toward the complainant. Michelle Acree, Eugene Garza's girlfriend, testified that appellant was not shooting at Oliva, but was shooting in the air in the direction Oliva was running.

Eugene Garza testified that he was good friends with both Oliva and appellant. He testified that he was talking with appellant when Oliva drove up. Mr. Garza testified he was standing next to Oliva when he began arguing with appellant. He further testified that Oliva was standing with the side of his hand behind his back. There was no physical contact between Oliva and appellant and he did not see Oliva with a weapon. Appellant pointed the gun at Oliva and shot him. The gun was approximately a foot from Oliva's body. He also testified that Oliva fell and appellant got out of the truck and shot in the air. On cross-examination, Garza testified that Oliva appeared to be drinking.

Epifanio Oliva, testified to basically the same facts. He testified that he knew appellant and Oliva's brother had some problems so he went over to appellant's truck to ask if they had a problem. He testified that he had not been drinking and that he did not curse at appellant or threaten him. He also denied that he put his hand behind his back. He testified that he saw the gun coming out of the window and then appellant shot him. He fell down and began running when he got up. He testified that appellant shot at him a second time which is why he ran.

Arthur Novak testified for the defense. In addition to the facts related above, he testified it appeared that Oliva had been drinking and that he was close enough to hear the dialogue between appellant and Oliva. He testified as to what was said and also said that Oliva had his hand behind his back and went toward the truck so appellant shot him. He thinks appellant shot two more times in the air and was not aiming at anyone. On cross examination he admitted that he did not see when appellant shot Oliva, but rather he had heard the shot.

Appellant's father testified that the gun was inside his jacket which was inside the truck. He had gotten the gun from someone so he could decide if he would buy it. He testified appellant did not know the weapon was in the jacket.

Appellant testified that he shot the complainant in self defense. He was feeling for something in the truck to defend himself when he felt the gun. He testified that he did not know the weapon was in the truck or that it was loaded.

Appellant contends in his first point of error that the trial court erred in failing to allow appellant to establish the prior relationship of the parties to this offense through the witness Eugene Garza.

██ The scope of cross-examination is within the control of the trial judge in the exercise of his sound discretion. *Toler v. State*, 546 S.W.2d 290, 295 (Tex.Crim.App. 1977). In order for a complaint concerning the exclusion of evidence to be considered by an appellate court, the record must show what the excluded testimony would have been; absent a showing of what such testimony would have been, or an offer of a statement concerning what the excluded evidence would show, nothing is preserved for review. *Stewart v. State*, 686 S.W.2d 118, 122 (Tex.Crim.App.1977), *cert. denied*, 474 U.S. 866, 106 S.Ct. 190, 88 L.Ed.2d 159 (1985). Where the matter complained of is not shown in the record nothing is presented for review *Romo v. State*, 568 S.W.2d 298 (Tex.Crim.App.1977).

██ In the instant case, there is nothing in the record to demonstrate what the excluded testimony regarding the prior relationship of the parties would have revealed. Therefore, there is nothing preserved for this court to review to determine if the trial court erred.

The record reflects that on direct examination, Mr. Garza testified as follows in response to the question of whether Oliva had said anything, "Sir he just [sic] saying he was going to fuck him up and that he was fucking with his blood." During cross examination, Garza repeatedly testified as to the threats made by Oliva. The witness

was also allowed to answer defense counsel's questions that Oliva did not like appellant and that there had been previous threats made. He was also allowed to testify that he took what Oliva had stated that night to be a threat.

In addition, although Oliva denied making any threats to appellant, Oliva did testify that he knew appellant and his brother had some problems.

A witness for the defense, Arthur Novak, was also allowed to testify as to the nature of the threats. He was also allowed to testify that he had previously seen Oliva with a gun. When the defense recalled Eugene Garza, he was also allowed to testify that he had seen Oliva with a gun.

During appellant's testimony, he was allowed to read the entire statement he had given to the police department. In the statement he states that he felt that Oliva was going to kill him. He further stated:

The only reason I shot Eppie is because I was afraid for my life, because I know with Eppie's past history he's always bragging about him being in the Ferguson Unit for the four years and nobody ever fuck with him because he always do violent things.

Eppie is always bragging about the robberies he has committed. I have seen Eppie armed with a knife and gun before.

Although the trial court did not allow appellant to go into the nature of the problems with Oliva's cousin, appellant was allowed to testify that Oliva and his brother were angry with him because of Oliva's cousin. He was then allowed to further testify as to his fear due to Oliva's reputation.

██ Before evidence can be admissible, it must first be relevant. Tex.R.Crim.Evid., Rule 402. The details of the problems between appellant and Oliva's cousin were not relevant to the instant case. The trier of fact was allowed to hear that there was a prior problem between Oliva and appellant. The testimony also revealed why appellant was afraid of Oliva. His testimony revealed that the animosity was due to a

problem between Oliva's cousin and appellant. Clearly, the fact that appellant may be afraid of Oliva and the reasons therefor were before the jury. The exact details of the problem with Oliva's cousin was not relevant to the issue in the instant case.

██ Although the trial court did not allow Eugene Garza to say why Oliva was mad at appellant, this evidence came in through appellant, both through his testimony and his statement. It is well settled that where the same evidence excluded comes in through another source there is no harm, even if there is error. *Womble v. State*, 618 S.W.2d 59, 62 (Tex.Crim.App. 1981); *Gonzalez v. State*, 571 S.W.2d 11, 13 (Tex.Crim.App.1978). We find that because the record does not contain the details which the trial court did not allow to come in, nothing is preserved for review. In addition, the trial court allowed sufficient testimony to come in to establish the prior relationship between Oliva and appellant for the jury to properly resolve the issue of self-defense. Appellant's first point of error is overruled.

Appellant asserts in his second point of error that the court erred in denying appellant the right to personally explain the prior relationship between himself and Oliva in support of his defensive theory of self-defense.

Our reply to appellant's first point of error is equally applicable to this point of error. As we stated previously, there is nothing in the record to demonstrate what this additional testimony would have revealed. Therefore, there is nothing preserved for this court to look at to determine if the trial court erred in not admitting the testimony.

Further, the trial court did not just allow the witnesses to state that Oliva had made threats. He allowed them to testify that Oliva was angry with appellant and had previously threatened him. He allowed both Oliva and appellant to testify that the argument was over a family member. He also allowed appellant to testify why he was afraid of the complainant. Clearly, the actual details of the problem between appellant and Oliva's cousin were not rele-

vant. What was relevant was whether appellant was afraid of Oliva and the trial court allowed this testimony. The trial court also allowed the witnesses, including appellant, to testify that the argument was over a family member. He also allowed appellant to testify why he was afraid of the complainant. The trial court also allowed the witnesses, including appellant, to testify that the nature of the words used were taken as a threat. The testimony before the jury was sufficient for the jury to know what the terminology used by Oliva meant.

We find that because the record does not reflect what the testimony would have revealed and the trial court allowed the witnesses to testify as to the prior relationship between Oliva and appellant and the reason for this animosity, the Court did not err in refusing to allow the details behind the dispute. Appellant's second point of error is overruled.

Appellant contends in his third point of error that the trial court erred in failing to allow appellant to explain to the jury the facts of his prior impeachable offense. The record reflects that appellant testified that he was on probation for the offense of unauthorized use of a motor vehicle. The judgment in that case, indicates that appellant was convicted of the offense of theft of a motor vehicle. The exchange between appellant and his trial counsel attempted to inform the jury that the offense consisted of joy riding on a three-wheeler. The prosecutor objected. While the trial court sustained the objection and advised appellant to answer the question asked, he did not instruct the jury to disregard.

██ It is well settled that no details of the prior conviction with which the witness has been impeached is admissible. *Stevens v. State*, 671 S.W.2d 517 (Tex.Crim.App. 1984); *Murphy v. State*, 587 S.W.2d 718 (Tex.Crim.App.1979); *Ordonez v. State*, 806 S.W.2d 895, 889 (Tex.App.—Corpus Christi 1988, pet. ref'd). It is also well settled that once the defendant voluntarily takes the witness stand during a criminal prosecution, he is subject to the same rules as any other witness and may be im-

peached, contradicted, made to give evidence against himself, cross-examined as to new matters, and treated in every respect as any other witness testifying on his behalf, except when there are overriding constitutional or statutory provisions. *Alexander v. State*, 740 S.W.2d 749, 763 (Tex.Crim.App.1987); *Matthews v. State*, 803 S.W.2d 347 (Tex.App.—Houston [14th Dist.] 1990, no pet.). Tex.R.Crim.Evid., Rule 610(b).

The rules do not contain any exception that appellant is allowed to explain the details of the prior conviction when, in that particular case, it may be beneficial to him. Appellant's third point of error is overruled.

Appellant asserts that he was denied effective assistance of counsel when counsel allowed, without objection, the State to state as a matter of fact that the weapon used by appellant to commit the offense was a stolen weapon.

The record does not support appellant's assertion that the question was asked of appellant. Appellant's father had testified that he had gotten the gun that day from someone he knew. If he liked the gun, he would pay the individual $100 for the weapon. The record reflects that on cross examination of *appellant's father*, he was asked if he knew the gun was stolen out of Dallas. His answer to this question was, no.

It is well settled that the standard to determine if appellant received effective assistance of counsel is that set out in *Strickland v. Washington*, 466 U.S. 668, 691, 104 S.Ct. 2052, 2066–67, 80 L.Ed.2d 674 (1984). It requires that 1) the performance was so deficient that it was outside the range of reasonable professional judgment and 2) but for trial counsel's errors, there is a reasonable probability that the result of the trial would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Hernandez v. State*, 726 S.W.2d 53, 56–57 (Tex.Crim.App.1986). Appellant is not entitled to errorless counsel. *Ingham v. State*, 679 S.W.2d 503 (Tex.Crim.App.1984).

Isolated instances in the record allegedly reflecting errors of commission or omission do not cause counsel to become ineffective, nor can ineffective assistance of counsel be established by isolating or separating out one portion of the trial counsel's performance for examination. In determining whether counsel has provided effective assistance, a court looks to the totality of the representation. Furthermore, the "totality of the representation" test is to be applied as of the time of trial, and not through hindsight. *Bridge v. State*, 726 S.W.2d 558, 571 (Tex.Crim.App.1986). See also *Ex Parte Welborn*, 785 S.W.2d 391, 393 (Tex.Crim.App.1990). Failure to object to every introduction of improper evidence or questioning does not indicate that appellant's counsel was ineffective.

We are not in a position to second guess, through appellate hindsight, the strategy adopted by counsel. *Harvey v. State*, 681 S.W.2d 646, 648 (Tex.App.—Houston [14th Dist.] 1984, pet. ref'd). An error in trial strategy will be deemed inadequate representation only if counsel's actions are without any plausible basis. *Schaired v. State*, 786 S.W.2d 497 (Tex.App.—Houston [1st Dist.] 1990, no pet.). If the evidence fails to show that an offense was committed or that the accused was connected to the offense, then evidence of an extraneous offense is not established. *McKay v. State*, 707 S.W.2d 23, 32 (Tex.Crim.App.1985), *cert. denied*, 479 U.S. 871, 107 S.Ct. 239, 93 L.Ed.2d 164 (1986).

It is clear from the nature of the prosecutor's question that he was not implicating appellant in the theft of the gun or even that appellant knew the gun was stolen. As a result, no extraneous offense was admitted against appellant. Appellant's father was asked, "Wouldn't [sic] it be fair to say Mr. Fuentes that you bought this gun from some unknown person knowing that it was stolen?" It is clear that the prosecutor was not attempting to implicate appellant. The nature of the question indicates that someone else stole the gun. In fact, the prosecutor did not even mention

the fact that the gun may have stolen during cross-examination of appellant or at any other time in the trial. The prosecutor was merely delving into the facts and circumstances of how the gun happened to be in the truck without appellant's knowledge. The manner in which the question was asked may be the reason trial counsel did not object.

Even if the testimony was inadmissible, this isolated failure of trial counsel to object does not constitute ineffective assistance of counsel. It was in no way implied that appellant was connected to the theft of the gun. Error if any, in admitting the testimony was harmless. *Cureton v. State*, 800 S.W.2d 259 (Tex.App.—Houston [14th Dist.] 1990, no pet.).

We find that looking at the totality of trial counsel's performance, it cannot be said that appellant received ineffective assistance. Appellant has also failed to prove that but for trial counsel's failure to object to this testimony, the outcome of the trial would have been different. Appellant's fourth point of error is overruled.

Accordingly, the judgment of the trial court is affirmed.