**Jimmy GIBBS, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 01–98–00781–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

July 8, 1999.

Opinion Denying Rehearing En Banc
Sept. 23, 1999.

Danny K. Easterling, Houston, for Appellant.

Dan McCrory, John B. Holmes, Houston, for State.

Justices MIRABAL, TAFT, and NUCHIA.

## OPINION

TAFT, Justice.

Appellant, Jimmy Gibbs, was charged with delivery of one to four grams of cocaine, enhanced by prior felony convictions for aggravated assault and possession of a controlled substance. A jury found appellant guilty of the charged offense, found the enhancement paragraphs true, and assessed punishment at 25 years in prison. We address: (1) whether the appellate record is complete; (2) whether the trial court erred when it chose a noncapital trial jury from two different venire panels; (3) whether the trial court erred when it *sua sponte* stopped appellant's cross-examination of a witness, and commented adversely on the relevance of appellant's evidence; and (4) whether appellant was denied his right to effective assistance of counsel. We affirm.

### Facts

In July 1997, Pasadena Police Officer T.L. Smith was conducting an undercover narcotics investigation. The investigation targeted drug traffickers who operated in subsidized housing communities. During the course of the investigation, an unidentified female informant introduced Officer Smith to appellant. After meeting appellant, Officer Smith entered appellant's car and asked if he brought the crack cocaine. Appellant pointed to the console where Officer Smith saw a cellophane bag, which contained eight white rocks. Officer Smith picked up the bag, verified the substance in the bag was cocaine, and then paid appellant for the cocaine.

### Incomplete Record

In appellant's fourth issue presented, he complains trial exhibits have not been included in the reporter's record, and therefore the appellate record is incomplete. Pursuant to an order issued by this Court,

the district clerk has supplemented the record to include the exhibits of which appellant complains. Therefore, appellant's complaint has been rendered moot.

We overrule appellant's fourth issue.

## Split Venire

In appellant's first issue presented, he complains the trial court erred when it chose a noncapital trial jury from two different venire panels. During the first day of jury selection, a 57–member venire panel was chosen. After venire members were stricken based upon cause and peremptory challenges, only seven venire members remained. The trial court told the seven venire members to return at a later date. Before that date, the trial court chose another venire panel, from which the remaining five jurors were selected.

### A. Waiver

■ To preserve a complaint for appellate review, a defendant must make his complaint to the trial court by a timely objection stating the specific grounds of his objection. TEX.R.APP.P. 33.1. In the present case, appellant did not object to the trial court's method of choosing the jury. Ordinarily, appellant's failure to object would cause us to conclude appellant waived any complaint for appeal. However, appellant argues his failure to object did not constitute a waiver of his complaint. Appellant relies upon the Court of Criminal Appeals' opinion in *Marin v. State*, 851 S.W.2d 275 (Tex.Crim.App. 1993).

### B. Applicability of *Marin*

In *Marin*, the court divided a criminal defendant's rights into the following three categories:

(1) absolute requirements and prohibitions;

(2) rights which must be implemented by the system unless expressly waived; and

(3) rights which are implemented only upon request.

*Id.* at 279. Appellant contends he has a right to have his entire jury selected from one venire panel, and that right fits into either the first or second *Marin* category. However, before determining which *Marin* category applies, we must first address whether appellant has a right to have a jury chosen from a single venire.

This Court has previously held that a defendant does not have a right to have his entire jury selected from one venire panel. *See Glivens v. State*, 918 S.W.2d 30, 32 (Tex.App.—Houston [1st Dist.] 1996, pet ref'd). Therefore, we need not address appellant's argument concerning *Marin*. Accordingly, appellant's failure to object constituted waiver of his complaint.

We overrule appellant's first issue.

## Limiting Cross–Examination & Trial Court's Comment

In appellant's second issue presented, he complains the trial court erred when it *sua sponte* limited appellant's cross-examination of Officer Smith about the confidential informant, and when it commented on appellant's evidence.

### A. Factual Context

During appellant's questioning of Officer Smith as to whether the name "Lisa" meant anything to him, the State objected by stating that evidence about the informant was not relevant. The trial court overruled the objection "at this point." Defense counsel asked several more questions, establishing that someone had aided Officer Smith in his investigation. The prosecutor objected once more, arguing that such evidence was not relevant; however, the trial court again overruled the objection. Defense counsel then asked Officer Smith several questions about the extent to which he trusted the informant. The prosecutor objected, claiming this line of questioning was speculative. The trial court did not rule on this objection, but

instead called the attorneys up to the bench. Outside of the jury's hearing, the trial court advised defense counsel that the relevance of the line of inquiry was questionable. The trial court informed defense counsel it would give him "a little leeway," but advised him to be brief; otherwise, the trial court would "cut off" defense counsel's questioning. Through further cross-examination, appellant established the informant was paid, and therefore had a motive for bringing people to Officer Smith. When defense counsel asked how much time Officer Smith and the informant had spent together, the trial court told defense counsel, "I think that's enough ... You're getting into irrelevant stuff." Counsel then moved on to other topics without objection.

## B. Limiting Cross Examination

■ Rule 33.1 of the Texas Rules of Appellate Procedure provides that a prerequisite to an appellant's making of a complaint on appeal is that appellant must have given the trial court an opportunity to rule on the same complaint by making that complaint to the trial court in the form of a specific and timely objection. TEX.R.APP.P. 33.1. Further, in the context of a trial court's ruling excluding evidence, the substance of the excluded evidence must have been made known to the trial court in the form of an offer of proof, or the excluded evidence must have been apparent from the context. TEX.R.EVID. 103(a)(2); *Romo v. State,* 568 S.W.2d 298, 304 (Tex.Crim.App.1977); *Fuentes v. State,* 832 S.W.2d 635, 638 (Tex.App.—Houston [14th Dist.] 1992, pet. ref'd.) (concluding that without a bill of exception, nothing is preserved for review). In the present case, the record does not reflect that appellant objected to the trial court's *sua sponte* limiting of appellant's cross examination of Officer Smith. Therefore, we conclude appellant did not preserve this complaint for appeal.

## C. Comment on the Evidence

■ Appellant contends that the trial court's comments, while limiting cross-examination, violated article 38.05 of the Texas Code of Criminal Procedure. Article 38.05 prohibits the trial court from discussing or commenting on the weight of the evidence. TEX.CODE CRIM.P.ANN. art. 38.05 (Vernon 1979). The record reflects appellant did not object to the trial court's statement. This would ordinarily cause us to conclude appellant waived any complaint for appeal. *See* TEX.R.APP. P. 33.1. However, appellant argues he has a right to a trial free from the trial court's comments on the evidence, and that this right is encompassed by either the first or second *Marin* category, i.e., it is either an absolute requirement or a right that must be implemented unless expressly waived.

Based upon article 38.05's requirements, we conclude appellant has a right to a trial free from the trial court's comments on the evidence. With regard to whether appellant's complaint is encompassed by either the first or second *Marin* category, in *Green v. State,* the Court of Criminal Appeals decided that question adversely to appellant. 912 S.W.2d 189, 192 (Tex.Crim. App.1995) (citing *Marin* for the proposition that defendant's failure to object resulted in defendant waiving his article 38.05 complaint). Therefore, we conclude appellant's failure to object constituted a waiver of his complaint.

We overrule appellant's second issue.

### Ineffective Assistance of Counsel

■ In appellant's third issue presented, he complains he was denied his right to effective assistance of counsel. Appellant contends he was denied effective assistance of counsel by his trial counsel's failure to: (1) object when the trial court indicated the jury would be selected from two different venire panels; (2) object when the trial court cut off his cross-examination of Officer Smith, and made comments on the evidence; (3) object during voir dire when a potential juror, who

was a deputy sheriff, stated he had handled appellant at the jail; and (4) file a motion requesting that the confidential informant's identity be disclosed. When reviewing whether an appellant was denied his right to effective assistance of counsel, we apply the usual standard of review. *See Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).

■■■ When the record is silent, an appellate court may not speculate about why counsel acted as he did. *Jackson v. State,* 877 S.W.2d 768, 771 (Tex.Crim.App.1994); *Gamble v. State,* 916 S.W.2d 92, 93 (Tex. App.—Houston [1st Dist.] 1996, no pet.). Without testimony from the trial counsel, the court must presume counsel had a plausible reason for his actions. *Safari v. State,* 961 S.W.2d 437, 445 (Tex.App.— Houston [1st Dist.] 1997, pet. ref'd, untimely filed). Although the record reflects appellant filed a motion for new trial, he did not obtain a hearing on his motion. Therefore, there is no evidence in the record to indicate why appellant's trial counsel engaged in the conduct of which appellant now complains. Accordingly, appellant has not overcome the strong presumption that his trial counsel acted within the range of reasonable professional assistance. *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064.

We overrule appellant's third issue.

## Conclusion

We affirm the judgment of the trial court.

## OPINION ON REHEARING

### PER CURIAM.

This Court denies appellant's motion for rehearing en banc and orders the clerk of this Court to publish its opinion from *Gibbs v. State,* 7 S.W.3d 175 (Tex.App.— Houston [1st Dist.] 1999, n.p.h.), pursuant to Tex.R.App. P. 47.4.

Majority of Court voted to deny en banc review.

O'CONNOR, J., dissenting.

MICHOL O'CONNOR, Justice dissenting from denial of en banc review.

This case presents the question whether a trial court may use two different venire panels called on two different days to select a jury in a noncapital case. While it is inevitably necessary in capital cases to use multiple small panels, in non-capital cases the entire twelve-member jury should be picked from one panel. That did not happen here. I believe it was error to use two separate venires to select the jury in this case, a non-capital case.

### A. The Selection of the Jury

On May 29, 1998 a panel of 57 persons was summoned for the venire. During voir dire, a large number were eliminated for cause, primarily for two reasons: inability to convict upon the testimony of only one witness, and reluctance to find a person guilty of a felony for a small amount of cocaine. Those were valid concerns on the part of the potential jurors, and the State was entitled to have the trial court strike those jurors for cause. As a result, however, only 25 members remained on the venire panel before the process of making peremptory strikes began. The trial court stated on the record that, if the parties used of all their available peremptory strikes, there might not be sufficient jurors. When the peremptory strikes were completed, only seven members of the panel were left to serve as jurors. The trial court kept the seven venire members who were selected, swore them as jurors, and then, three days later, picked the remaining five jurors from an entirely different venire.

In my opinion, once it appeared that the venire panel was too small to permit the parties to use all their peremptory strikes, the trial court should have either summoned additional venire members or declared a mistrial. Although there is no

direct statutory requirement to that effect, I believe it is implicit in several statutory provisions in the Code of Criminal Procedure.

## B. Code of Criminal Procedure

A number of articles in the Code of Criminal Procedure imply that all jurors must be picked from the same venire in noncapital cases. First, Article 35.01 begins by stating:

> When a case is called for trial and the parties have announced ready for trial, the names of those summoned as jurors in the case shall be called.

This plain statutory language means that a defendant and his counsel are entitled, after the parties announce they are ready, to a list of the entire panel of potential jurors. That is supported by the explicit command of Article 35.11 that "[t]he clerk shall deliver a copy of the list to the State's counsel and to the defendant or his attorney."

There are good reasons to require a jury panel in a non-capital to be selected from a single venire panel. For one thing, a defendant might look at the seated venire and decide to ask for a jury shuffle, under the authority of Article 35.11. A defendant could not make a fully informed decision as to the need for a shuffle unless he could see the complete venire that was to be used. What happened in this case was tantamount to showing the defendant only half the venire at the beginning. Similarly, a challenge under Articles 35.07 and 35.08 to the main array of the venire summoned must be made before voir dire. Splitting jury selection between two arrays (there is a new array of over a thousand people every day in Harris County) makes such a challenge impossible.

Other articles in Chapter 35, relating to the process of whittling the venire down to twelve jurors, imply that the full venire must be in the courtroom before the peremptory strikes are made. After the challenges to the underlying array are out of the way, Article 35.10 requires the trial court to "try the qualifications of those present who have been summoned to serve as jurors." The phrase "those present" suggests that every potential juror for the case should be in the courtroom at the beginning of voir dire.

Article 35.14 provides for peremptory challenges made "without assigning any reason therefor," meaning counsel can strike a venireman just on how the venireman looks (subject to the limitations of Article 35.261). The question "How does a juror look?" begs the further question: "Compared to whom?" To exercise peremptory strikes intelligently, counsel must be able to see the entire group of potential jurors. If, for example, counsel in a narcotics case could see that the full panel had two "aging hippies" with long hair and beards, he might strike Aging Hippie Number 1, whose brother was a policeman, whereas he might keep the first one if he did not know that Aging Hippie Number 2 was available.

Article 35.17 contains an explicit reference to conduct of voir dire examination "in the presence of the entire panel." This provision permits the trial court to hold "bench conferences" so that a particular venire member's answers to certain questions are not heard by the whole panel, but it otherwise contemplates that all potential jurors shall hear the other questions posed to the panel at large. Comparing the voir dire on May 29, 1998 and on June 1, 1998 shows that the two venires did not hear the same questions and answers, as Article 35.17 contemplates.

Article 35.20 provides that "[i]n selecting the jury from the persons summoned, the names of such persons shall be called in the order in which they appear upon the list furnished the defendant." Plainly the "list" would have been different if the court had started over with an entirely new venire. This is also where the effect of a shuffle would be felt, and as stated already, it is impossible to know whether a shuffle would have been requested if one, larger venire had been summoned so that

a complete jury could be seated from one venire. Similarity, this same "list" controls the operation of Article 35.26, which provides the final step in the process of seating the jury that actually will hear the case at trial.

Finally, the Code of Criminal Procedure makes special provisions for capital cases. Chapter 34 of the Code is devoted exclusively to the process of selecting venires for a capital jury trial. The Code specifically recognizes one exceptional category (i.e., capital cases only), which means it does not recognize any other exceptions, according to the maxim of statutory construction, *Expressio unius est exclusio alterius.* As explained in *Ex parte McIver,* 586 S.W.2d 851, 856 (Tex.Crim.App. 1979):

> It is a well-known rule of statutory construction in this State that the express mention or enumeration of one person, thing, consequence, or class is tantamount to an express exclusion of all others.

A statutory exclusion is a "thing" or "class" for purposes of this maxim of construction. Thus, the Legislature's expressed intent to make only one exception for piecemeal assembly of a criminal case jury seems clear. Notice in particular that, for this one exceptional category, Article 34.02 provides for the summoning of additional veniremen "[i]n any criminal case in which the court deems that the veniremen theretofore drawn will be insufficient for the trial ... or ... in which the venire has been exhausted by challenge or otherwise...." The Legislature easily could have applied the same language to noncapital cases, but it did not.

For these reasons, I would reverse and remand for a new trial.