# MEMORANDUM OPINION

No. 04-07-00738-CR

Kathryn **WILLIAMS**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the County Court, Wilson County, Texas
Trial Court No. 06-09-0450-CRC
Honorable Marvin Quinney, Judge Presiding

Opinion by:    Alma L. López, Chief Justice

Sitting:    Alma L. López, Chief Justice
    Phylis J. Speedlin, Justice
    Rebecca Simmons, Justice

Delivered and Filed:  June 11, 2008

AFFIRMED

Kathryn Williams was convicted by a jury of assault causing bodily injury in a family

violence case and sentenced to 365 days confinement, which was suspended for twenty-four months.

Williams contends: (1) the evidence is factually insufficient to support her conviction; (2) the trial

court committed fundamental error by omitting from the jury charge the requisite language regarding

mental state; and (3) trial counsel was ineffective for failing to review and correct the charge. We affirm the judgment of the trial court.

## BACKGROUND

During the summer of 2006, Kathryn and her seventeen-year-old daughter, Jessica, lived outside of Stockdale. Kathryn had been unsuccessfully looking for work and was having trouble paying the bills. Jessica was working for Paula Medaris doing odd jobs on weekdays and at Buffalo Joe's on Saturdays. On July 26, 2006, as Kathryn drove Jessica to work at Medaris's, the two argued over Jessica paying the electricity bill. When Jessica told Kathryn she would not help pay the bill, Kathryn stopped the car on the side of the highway and allegedly assaulted Jessica by grabbing her arm and her hair, and scratching Jessica on the shoulder. Afterward, Kathryn stopped at two churches in an attempt to borrow money to pay the electricity bill, then took Jessica to Medaris's house for work. Once Kathryn departed, Jessica told Medaris what had happened and called the sheriff. Corporal Moore investigated the incident by talking to Jessica and taking pictures of a small scratch on Jessica's shoulder. After interviewing Kathryn, Corporal Moore arrested her, and she was convicted of assault causing bodily injury to Jessica.

## FACTUAL SUFFICIENCY

Kathryn argues the evidence is factually insufficient to support her conviction. We review the factual sufficiency of the evidence by considering all of the evidence in a neutral light and only reversing if: (1) the evidence is so weak as to make the verdict clearly wrong or manifestly unjust, or (2) the verdict is against the great weight and preponderance of the evidence. *Watson v. State*, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006) (citing *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000)). An appellate court compares the evidence which tends to prove the disputed fact to

the evidence which tends to disprove that fact. *Cunningham v. State*, 982 S.W.2d 513, 521 (Tex. App.—San Antonio 1998, pet. ref'd) (citing *Santellan v. State*, 939 S.W.2d 155, 164 (Tex. Crim. App. 1997)). "[S]ufficiency of the evidence should be measured by the elements of the offense as defined by the hypothetically correct jury charge for the case." *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). This hypothetically correct jury charge standard "ensures that a judgment of acquittal is reserved for those situations in which there is an actual failure in the State's proof of the crime rather than a mere error in the jury charge submitted." *Id.* Although we analyze all of the evidence presented at trial, the trier of fact is the sole judge of the facts, the credibility of the witnesses, and the weight given to their testimony. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986). We may not substitute our own judgment for that of the fact finder. *Johnson*, 23 S.W.3d at 12.

Kathryn contends the evidence is insufficient to support a finding of guilt for the offense of assault causing bodily injury, especially in light of the fact that the application paragraph of the jury charge omitted the culpable mental state. She argues "because of the gross error of relieving the State of its burden of proving beyond a reasonable doubt the scienter to which it refers in its brief, there is no way that the [c]ourt can know, or determine, if the jury did in fact" find beyond a reasonable doubt that Kathryn did intentionally, knowingly, or recklessly cause bodily injury to Jessica by scratching her. We examine the evidence as if the jury charge included the scienter elements as authorized by the indictment. *See Malik*, 953 S.W.2d at 240. Kathryn's defensive theory was that Jessica's scratch was the result of an accident, i.e. Kathryn lacked a culpable mental state. Kathryn's theory was introduced through a video-recording of Kathryn's arrest presented by

the State and was developed during cross-examination by the defense. Kathryn presented no other evidence.

The State presented the testimony of Jessica who described an argument with Kathryn over the electricity bill and how Kathryn punched her in the left side, yanked her arm "hard" with one hand, grabbed her hair twice with the other hand and, in doing so, scratched Jessica's back. She also testified that Kathryn took a cell phone away from Jessica and threw it away. Jessica and Kathryn were the only occupants of the truck, and there is no contrary evidence that Kathryn's actions were directed at anyone but Jessica. Although Jessica testified she was too frightened to leave the truck while Kathryn was inside the churches, she testified that she looked in the mirror upon arriving at Medaris's house and saw the scratch on her back. Jessica then reported the incident to Medaris, her friend Andrea, and the sheriff.

The State also presented the testimony of Corporal Moore who investigated the assault and took pictures of Jessica's back. The State introduced pictures of the scratch into evidence. Corporal Moore also testified about his interview of Kathryn, and the State introduced a video-recording of the interview in which Kathryn admitted to having an argument over the electricity bill, grabbing Jessica's arm and, at least, getting near Jessica's hair. Kathryn also admitted to pulling over and telling Jessica to get out of the truck. Kathryn claimed she did not have sufficient nails to scratch Jessica, she was unaware that she had scratched Jessica, and, in any case, it was an accident. Corporal Moore testified that it was not unusual for an assault victim to have only one scratch mark rather than several and that he did not recall seeing any blood during the investigation. The State further introduced the testimony of Medaris who stated that during her visits with Kathryn, Kathryn

exhibited "big mood swings." Medaris testified that when Jessica arrived on the day of the alleged assault, "she was pretty hysterical"; however, Medaris never saw the scratch.

Comparing the evidence in this case to the hypothetically correct jury charge, we conclude the evidence is not so weak or against the great preponderance of the evidence as to require acquittal. Jessica's version of the events leading up to the assault were corroborated by Kathryn's comments to Corporal Moore. Because there was physical evidence of a scratch on Jessica's back, the central question at trial was whether Kathryn caused the scratch intentionally, knowingly, or recklessly. The minimally required mental state of "recklessly" required the State to prove that Kathryn consciously disregarded a substantial and unjustifiable risk that she would scratch Jessica. The jury could have reasonably believed Jessica's testimony that she was buckled and locked in the passenger compartment of the truck and could not get away from Kathryn's reach, and disbelieved Kathryn's comments that she could not have scratched Jessica. Furthermore, the jury could have believed that Kathryn's comment that "it was an accident" was an admission that Kathryn did scratch Jessica and that the act was done at least recklessly. The evidence is not, therefore, clearly wrong or manifestly unjust. Kathryn's first issue is overruled.

## JURY CHARGE ERROR

Kathryn contends the trial court committed fundamental error by omitting from the application paragraph the requisite culpable mental state for causing bodily injury. When reviewing charge error, we first determine if there is error in the charge, then we determine whether such error harmed the defendant to the extent that reversal is required. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on motion for reh'g). If the defendant fails to make a timely objection to the charge at the trial court, we will reverse only if the error was so egregious that it deprived the

defendant of a fair trial. *Id.* In evaluating the extent of the harm, we review the entire record assessing: the jury charge in its entirety; all of the evidence including the contested issues and the weight of the probative evidence; counsels' statements during voir dire and at trial; and any other pertinent information in the record. *Id.* "A jury charge which omits an essential element of the offense as alleged in the indictment is fundamentally defective." *Markham v. State*, 635 S.W.2d 153, 154 (Tex. App.—San Antonio 1982, no writ). Although our review should not be limited to a part of the charge standing alone, "the crucial part of the charge in determining the existence of fundamental error is that part where the law is applied to the facts." *Hanks v. State*, 625 S.W.2d 433, 435 (Tex. App.—Houston [14th Dist.] 1981, no writ).

Because Kathryn did not object to the charge at trial, we must evaluate the trial court's charge for error, then determine if any error found was egregious. *See Almanza*, 686 S.W.2d at 171. The trial court's charge set out the information against Kathryn but omitted the words "intentionally, knowingly, or recklessly" from the application paragraph. In the abstract portion of the charge, the court gave the definition of intentionally, knowingly, recklessly, and bodily injury, and described the offense as a "person intentionally, knowingly, or recklessly causes bodily injury to another." In the application paragraph, the court stated: "Now if you find beyond a reasonable doubt that in Wilson County, Texas on or about July 26, 2006, the Defendant, Kathryn Williams, caused bodily injury to Jessica Williams, a member of defendant's family or household, by scratching her, you will find the defendant guilty." Kathryn contends the court's charge fails to include the necessary culpable mental state as alleged in the information. We agree. *See Sattiewhite v. State*, 600 S.W.2d 277, 283-285 (Tex. Crim. App. 1979).

Having found that the trial court erred by not including the culpable mental state in the application paragraph of the charge, we next determine whether such omission by the court resulted in egregious error and denied Kathryn a fair trial. *See Almanza*, 686 S.W.2d at 174. Reviewing the charge as a whole, we conclude the jury was instructed on the definitions of intentionally, knowingly, recklessly, and bodily injury, and was instructed that the commission of intentionally, knowingly, or recklessly combined with resulting bodily injury was a criminal offense. The evidence established Kathryn did, in fact, grab her daughter's arm and reach for her hair, and there was a scratch on Jessica's shoulder. On the other hand, the record reflects that the chief contested issue was whether the scratch was the result of an accident. During voir dire, opening statements, and closing arguments, both the State and the defense discussed the elements of assault as intentionally, knowingly, or recklessly causing bodily injury to another person. During voir dire, defense counsel pointed out that assault included two parts—a mental part and a physical part. During opening statements, the State again addressed the culpability element of the offense: "Those were intentionally, knowingly, or recklessly. It could be any [one] of those. If you feel that the actions that she took were reckless, well that's just proper mental state." The defense counsel followed by stating: "We talked yesterday a little bit about how all crimes require two parts, a mental part and a physical part. . . . The evidence will not show Ms. Williams ever acted intentionally, knowingly, or recklessly . . . ." During closing arguments, the State reiterated "I also want you to understand something, there [are] two elements here. I have to show you bodily injury. . . . But I also have to show you the mind-set; I have to show you that she intentionally, knowingly, or recklessly did it." The defense counsel summarized: "Well, they are saying Kathryn intentionally, knowingly, or

recklessly scratched Jessica . . . . Go back and listen to [the video tape], because that is consistent with someone who did not have a culpable mind-set."

Considering the entire record and the state of the evidence, we determine the court's error in omitting the requisite mental state from the application paragraph of the charge did not result in egregious harm to Kathryn. The jury was constantly reminded of the three possible mental state elements and was instructed that the charged offense required it to find Kathryn exhibited at least one of them in causing the bodily injury to Jessica. The judge's failure to include the requisite mental state in the application portion of the charge did not likely deprive Kathryn of a fair trial by lowering the State's burden of proof. The State and the defense counsel made it clear that the jury was required to find two elements in order to convict Kathryn of assault—a mental part and a physical part. Having found the charge fairly leads the jury to the appropriate issues of fact and the evidence is sufficient to support the jury's finding of guilt, we conclude Kathryn was not egregiously harmed by the erroneous jury charge. *See id.* at 173-74.

Kathryn also argues that the trial court disregarded the requirements of Texas Code of Criminal Procedure article 36.14 which states: "Before said charge is read to the jury, the defendant or his counsel shall have a reasonable time to examine the same and he shall present his objections thereto in writing." *See* TEX. CODE CRIM. PROC. ANN. art. 36.14 (Vernon 2007). Despite Kathryn's argument that neither she nor "her counsel were ever afforded the opportunity to review the Charge of the Court prior to its being read to the Jury," the record is silent. The record indicates the judge recessed the court for lunch "so *they* can prepare the charge for the Court to present." After lunch, the judge read the charge upon the resumption of the proceedings, and Kathryn did not object. If Kathryn was not given the opportunity to review the charge before the judge began reading it to the

jury, it was incumbent upon Kathryn to object immediately. *See* TEX. R. APP. P. 33.1(a). Furthermore, if Kathryn did object to the charge and the court reporter did not record her comments, it was incumbent upon Kathryn to object to the court reporter's failure to record the proceedings. *See Williams v. State*, 937 S.W.2d 479, 487 (Tex. Crim. App. 1996). "[T]he purpose of requiring a timely, specific objection is to allow the trial court to have the opportunity to make a determination and ruling on the complained-of point" and make corrections, if necessary. *Brossette v. State*, 99 S.W.3d 277, 285 (Tex. App.—Texarkana 2003, pet. ref'd, untimely filed) (stating "it is the burden of the parties to object to the trial court's failure to comply with a statutory requirement"). Because Kathryn failed to object to the judge's reading of the jury charge before she had an opportunity to review it or to the court reporter's failure to record such an objection, if any, Kathryn deprived the trial court of an opportunity to correct any error and failed to preserve the issue for appeal. *See Williams*, 937 S.W.2d at 487.

## INEFFECTIVE ASSISTANCE OF COUNSEL

Kathryn contends her trial counsel was ineffective for failing to ensure that the charge given to the jury was correct. A defendant is entitled to effective assistance of counsel under both the United States and Texas Constitutions. U.S. CONST. amend. VI; TEX. CONST. art. I, § 10; TEX. CODE CRIM. PROC. ANN. art. 1.051 (Vernon Supp. 2007). To prove ineffective assistance of trial counsel on appeal, an appellant must show: (1) counsel's assistance fell below an objective professional standard; and (2) counsel's actions thereby prejudiced appellant's defense. *Strickland v. Washington*, 466 U.S. 668, 687-88, 692 (1984); *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). Appellant must prove, by a preponderance of the evidence, that but for counsel's error, the outcome of her trial would have been different. *Jackson v. State*, 973 S.W.2d 954, 956 (Tex. Crim. App.

1998). In reviewing an ineffective assistance of counsel claim, we consider the totality of counsel's representation in light of the particular circumstances of the case and presume that counsel acted competently and made decisions based on a reasonable trial strategy. *See Ex parte Welborn*, 785 S.W.2d 391, 393 (Tex. Crim. App. 1990). To rebut this presumption, the basis for any allegation of ineffectiveness must be affirmatively founded in the record. *Thompson*, 9 S.W.3d at 813.

It is problematic for an appellant to establish ineffective assistance when the record does not specifically mention counsel's reasons for his actions, and appellant does not develop an evidentiary record through a hearing on a motion for new trial. *See Gibbs v. State*, 7 S.W.3d 175, 179 (Tex. App.—Houston [1st Dist.] 1999, pet. ref'd). Therefore, a "substantial risk of failure accompanies an appellant's claim of ineffective assistance of counsel on direct appeal." *Thompson*, 9 S.W.3d at 813. However, "when no reasonable trial strategy could justify the trial counsel's conduct, counsel's performance falls below an objective standard of reasonableness as a matter of law, regardless of whether the record adequately reflects the trial counsel's subjective reasons for acting as she did." *Andrews v. State*, 159 S.W.3d 98, 102 (Tex. Crim. App. 2005). Even if appellant is able to prove trial counsel's performance was deficient, appellant must also affirmatively prove that she was prejudiced by counsel's actions. *Thompson*, 9 S.W.3d at 812. Appellant must demonstrate a reasonable probability that the result of the proceeding would have been different if trial counsel had acted professionally. *Id.* A reasonable probability is a probability sufficient to undermine confidence in the trial's outcome. *Id.*

Kathryn claims her trial counsel was ineffective because counsel failed to review the charge before it was read to the jury, failed to object to the lack of a mental state element in the application paragraph of the charge, failed to request a jury instruction on accident or mistake, and failed to cure

the omission of the mental state element during argument by explaining there was insufficient evidence to support a finding that the scratch was inflicted intentionally, knowingly, or recklessly. Kathryn also contends her trial counsel failed to seek any pre-trial discovery or conduct other routine trial preparation. Kathryn argues that, when considering the totality of her counsel's performance, it fell below even minimum standards.

A defendant is entitled to an affirmative instruction on every defensive issue raised by the evidence regardless of the strength, weakness, or credibility of the evidence. *Hamel v. State*, 916 S.W.2d 491, 493 (Tex. Crim. App. 1996); *Villarreal v. State*, 821 S.W.2d 682, 685 (Tex. App.—San Antonio 1991, no pet.). To be entitled to a defensive instruction, the defensive issue raised by the evidence must be one established by the penal code and applicable to the charged offense. *Willis v. State*, 790 S.W.2d 307, 314-15 (Tex. Crim. App. 1990). Although we must consider the totality of the circumstances, any deficiency by the trial counsel must be affirmatively founded in the record. *See Thompson*, 9 S.W.3d at 813. Here, trial counsel's actions, of which Kathryn complains, are not founded in the record. Based on the record, we cannot say that Kathryn's trial counsel failed to review the charge, suggest changes to it, or object to the lack of mental state in the application paragraph. Nor can we say whether or not trial counsel interviewed the State's witnesses. The record is simply silent. Neither does the record reveal trial counsel's strategy for developing the charge as it was, but a defense of "accident" no longer exists in the penal code, and there was no evidence that Kathryn did not voluntarily engage in the alleged conduct that injured Jessica. *See Williams v. State*, 630 S.W.2d 640, 644 (Tex. Crim. App. 1982). The evidence merely indicated Kathryn did not intend the resulting injuries. *See id.*; *see also Rogers v. State*, 105 S.W.3d 630, 638

(Tex. Crim. App. 2003). Furthermore, the defense of "mistake of fact," while found in the penal code, is not applicable to these facts. *See Willis*, 790 S.W.2d 307, 315.

The record does reveal, however, that prior to trial, trial counsel filed a motion in limine regarding extraneous offenses, objected to evidence of Child Protective Services' reports, conferred with the State to have the State's arrest tape edited to delete any irrelevant footage, and objected to the presentation of evidence regarding the condition of Kathryn's home. The record further reveals that the trial counsel stated in voir dire that the jury had to find Kathryn had a culpable mind set of intentionally, knowingly, or recklessly before she could be found guilty beyond a reasonable doubt. Before testimony began, Kathryn's counsel invoked the Rule so that the State's witnesses could not hear the testimony of other State's witnesses. During opening statements, trial counsel stated that the "evidence will not show Ms. Williams ever acted intentionally, knowingly, or recklessly." During trial, trial counsel objected to the State's introduction of evidence regarding the relationship between Kathryn and Jessica because it was not relevant to "any of the elements of the offense charged. None of her responses or none of the questions have anything to do with knowing, intentional, or reckless assault." Trial counsel reiterated his objection to the evidence of the condition of Kathryn's house because "this goes neither to prove or disprove any of the elements." Trial counsel questioned Corporal Moore about why there was no blood, only one scratch mark, and why Kathryn seemed surprised to hear that her daughter had been scratched. During jury argument, trial counsel directed the jury to disregard irrelevant facts and to focus on the "whether or not Ms. Williams intentionally, knowingly, or recklessly scratched her daughter." He argued "I submit to you that the evidence . . . certainly did not prove beyond a reasonable doubt the charges." Based on the current state of the record, Kathryn has failed to rebut the presumption that counsel acted

competently and made decisions based on a reasonable trial strategy. *See Ex parte Welborn*, 785 S.W.2d at 393. Kathryn's final issue is overruled.

## CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment.


Alma L. López, Chief Justice

DO NOT PUBLISH