Ruben **LOPEZ**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 13–86–220–CR.

Court of Appeals of Texas, Corpus Christi.

Feb. 19, 1987.

Aron Pena, Edinburg, for appellant.

Wiley L. Cheatham, Cuero, for appellee.

Before NYE, C.J., and KENNEDY and SEERDEN, JJ.

## OPINION

NYE, Chief Justice.

This is an appeal from a conviction for the offense of possession of marijuana in an amount of more than five pounds but less than fifty pounds. Both guilt and punishment were tried to the court, which assessed punishment at sixteen years' imprisonment.

In his first ground of error, appellant complains that the trial court erred in overruling his motion to quash the indictment. The indictment states in pertinent part: "that Ernesto Salinas Ibarra, Ruben Lopez Lopez and Roberto Ruiz, acting together ... did then and there unlawfully, knowingly and intentionally possess a usable quantity of marihuana, to wit: in an amount more than five pounds but not more than fifty (50) pounds...." Appellant attacks the indictment because: 1) it failed to allege "the culpable mental state of Appellant in acting together in committing the offense"; and 2) it failed to allege in what manner appellant possessed the contraband.

▇▇▇ When an indictment charges two or more defendants with the same offense, it is unnecessary for the indictment to allege that they "acted together." *Martinez v. State*, 157 Tex.Cr.R. 603, 252 S.W.2d 186, 187 (1952). The language "acting together" in an indictment has long been held as "surplusage." *Randolph v. State*, 656 S.W.2d 475, 477 (Tex.Crim.App.1983); *Jackson v. State*, 486 S.W.2d 764, 766 (Tex. Crim.App.1972); *Martinez*, 252 S.W.2d at 187. Since this language was "surplusage," it could not have harmed appellant. *Jackson*, 486 S.W.2d at 766.

Appellant's reliance on *Thompson v. State*, 697 S.W.2d 413 (Tex.Crim.App.1985), is misplaced. Here the indictment alleges three defendants committed the same act. The indictment alleges that Ibarra, appellant, and Ruiz all knowingly and intentionally possessed marijuana. Appellant was charged with possession of marijuana by this indictment, and the language that he committed this act along with others was merely surplusage.

▇▇▇ Appellant's argument that the indictment is defective because it failed to allege how he possessed the controlled substance is also untenable. An indictment which only alleges that a defendant knowingly and intentionally possessed a controlled substance is sufficient because the term "possess" does not go to an act or omission of the defendant; thus, a more precise definition of "possess" is not required. *Knab v. State*, 626 S.W.2d 60, 61 (Tex.Crim.App.1982); *Phelps v. State*, 623 S.W.2d 936, 937 (Tex.Crim.App.1981). The fact that this indictment alleged more than one person possessed marijuana does not provide any justification for altering the application of this general rule. Appellant's first ground of error is overruled.

By his fourth ground of error, appellant complains the trial court erred in considering a pre-sentence investigative report (PSI) which contained uncorroborated reports of prior unadjudicated arrests and other extraneous matters. The punishment phase of this trial was tried to the court. After appellant made his objections to the PSI report, the trial court stated, "[T]hen as to the portions of the PSI that you object to the Court will not consider those."

▇▇▇ A trial court is presumed to have disregarded any inadmissible evidence when reaching its decision on sentencing. *Holland v. State*, 481 S.W.2d 410, 411 (Tex. Crim.App.1972); *Trevino v. State*, 655 S.W.2d 210, 212 (Tex.App.—Corpus Christi 1983, no pet.). This presumption applies when a pre-sentence report containing information about prior unadjudicated arrests is admitted over a valid objection. *See Rhine v. State*, 642 S.W.2d 228, 229 (Tex.App.—Houston [14th Dist.] 1982, no pet.). Not only is there no showing that the trial court relied on the inadmissible information in assessing punishment, but the trial court expressly stated this information would not be considered. Further, even without considering the prior arrests, defendant had several other drug-related convictions which the trial court could properly consider. Ground of error four is overruled.

■ By his fifth ground of error, appellant complains of prosecutorial misconduct during arguments to the court in the penalty phase of the trial. Appellant points to several instances where the prosecutor clearly argued outside the record. While we agree that the prosecutor's actions were improper, the trial court was sitting as trier of fact and was quite capable of disregarding any improper argument, and will be presumed to have done so. Ground of error five is overruled.

■ In his second ground of error, appellant challenges the sufficiency of corroboration of the accomplice witnesses' testimony. He argues that there is no independent inculpatory evidence which tends to connect him with the offense.[1] The test for the sufficiency of corroboration is to eliminate the testimony of the accomplice(s) from consideration and then examine the testimony of the other witnesses to determine if there is inculpatory evidence which tends to connect the accused with the commission of the offense. *Vertz v. State*, 702 S.W.2d 196, 196 (Tex.Crim.App.1986); *Cruz v. State*, 690 S.W.2d 246, 250 (Tex.Crim. App.1985).

A brief recitation of the evidence in this case other than that provided by Ruiz and Salinas, the two accomplices, is necessary. On March 27, 1985, Officer Manual Garcia, an experienced narcotics investigator for the McAllen Police Department, was contacted by a confidential informant and told that Coca-Cola trucks were being used to smuggle marijuana northward.[2] This informant, who had given reliable information to Garcia once before, told Garcia that appellant was furnishing the marijuana for transport, and showed him appellant's residence and a blue-over-blue van used to pick up the marijuana "up north." The informant identified Ernesto Salinas Ibarra as the Coca-Cola truck driver involved. The informant's information proved to be "very accurate."

Garcia received another telephone call from the informer on April 13, 1985. As a result of that conversation, Garcia set up surveillance of Salinas' residence where the Coca-Cola truck was parked. Garcia was contacted again by the informant the next day and told that someone would be dropping off a large cardboard box full of marijuana, and that appellant would be receiving it north of the Border Patrol checkpoint.

Garcia then observed Robert Ruiz deliver a large cardboard box to Salinas' house and put it in the Coca-Cola truck. Garcia and a surveillance team followed Salinas. Garcia spotted the truck and appellant's blue van "running together" in a northerly direction on Highway 281 approximately four or five miles north of Edinburg. The vehicles passed through the Border Patrol checkpoint south of Falfurrias and later stopped across the street from each other at a truck stop in Falfurrias. The driver of the truck walked across the street and made contact with the person in the van. A few minutes later both vehicles continued northward.

The vehicles turned north onto Highway 77 at Riviera and were "still running together." The surveillance team continued to follow them through Kingsville, Robstown, and Woodsboro. At Refugio, the blue van stopped at a convenience store and got gasoline, while the Coca-Cola truck stopped a few blocks away at a Whataburger store. Then the van drove to the Whataburger, and Garcia observed appellant and Salinas conversing. The two talked for several minutes, then the truck and van continued heading north on Highway 77A towards Goliad. At about 2:30 a.m., the surveillance team lost sight of the vehicles at an intersection. Garcia did not see appellant again that night.

Ralph Sramek, a narcotics investigator with the Texas Department of Public Safety, was a member of the surveillance team. His testimony was essentially the same as Garcia's. He positively identified appellant

---

1. Aside from the corroboration challenge, appellant does not attack the overall sufficiency of the evidence to support the conviction.

2. Appellant objected at trial to the admission of the informant's information as hearsay. However, he brings no challenge to its admission on appeal.

in the blue van at the gasoline station in Refugio. He testified appellant was the only person in the blue van.

Another member of the surveillance team, Officer Segovia, then with the McAllen Police Department, testified that he was able to identify appellant as the driver of the van at the truck stop in Falfurrias. He also observed appellant as he "gassed up" in Refugio and met Salinas at the Whataburger. He stated that he "could see that they both were together." He also testified that his team lost sight of the vehicles at the intersection of Highways 77A and 183. He continued toward Cuero and finally caught up with the van. Appellant was driving at a high rate of speed, "80 plus," but then slowed down. The van made a U-turn and headed back to Goliad and continued the erratic driving pattern, speeding up then slowing down.

The van pulled over at a rest area, but then sped off again towards Goliad. Segovia intercepted the van while it was stopped at an intersection. Appellant was driving the van. Appellant consented to a search of the vehicle, which revealed no narcotics. Appellant was not arrested, but was permitted to leave. Segovia then went northward towards Cuero and spotted the same Coca-Cola truck at the same rest area where appellant had earlier stopped his van. Salinas consented to a search of the truck which revealed a large quantity of marijuana.

The accomplices, Salinas and Ruiz, basically testified that the marijuana belonged to appellant; that appellant paid Ruiz to deliver it to Salinas; that he paid Salinas to transport it north across the Border Patrol checkpoint; and that he traveled along with Salinas during the trip.

■ We find from a review of the entire record that the independent evidence was sufficient to corroborate the testimony of the two accomplice witnesses. Garcia had information from a reliable informant that the marijuana belonged to appellant. Appellant's actions were consistent with that information. There is evidence that appellant was, if not in the company of Salinas, at least in the general vicinity during the commission of the offense. His

van traveled with the truck and he was positively identified three times along the route, in Falfurrias, Refugio, and when he was stopped. He was seen talking with the truck driver at several points along the route. His erratic driving and his stopping at the same rest area where Salinas was later found with the marijuana also tends to independently connect him with the commission of the offense. Ground of error two is overruled.

■ Appellant's third ground of error complains of the introduction of oral statements made by appellant after an "illegal stop and search of his vehicle." Segovia testified that when they stopped appellant and searched his van, "he [appellant] asked me not to tell his probation officer and he would promise that he'll work a couple of deals pertaining to narcotics trafficking." Appellant objected to the admission of everything related to the stop and search. The trial court then stated, "All right. To simplify the matters I'm not going to consider the statement the Defendant made at the time of his arrest."

Even assuming, for the sake of argument, that this oral statement was inadmissible, the trial court was the trier of fact and will be presumed not to have considered any inadmissible evidence. No error resulted.

All of appellant's grounds of error have been considered and are overruled. The judgment of the trial court is AFFIRMED.