

NUMBER 13-09-00511-CR
NUMBER 13-09-00512-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

**FRANCISCO TREVINO,**                                                        **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                                        **Appellee.**

---

**On appeal from the 105th District Court
of Nueces County, Texas.**

---

# MEMORANDUM OPINION

**Before Justices Rodriguez, Benavides, and Vela
Memorandum Opinion by Justice Benavides**

Appellant, Francisco Trevino, appeals from his convictions arising out of his alleged

sexual abuse of V.N., a child.  In trial court cause number 06-CR-3851-D,[1] Trevino was

---

[1] Appellate cause number 13-09-512-CR.

convicted of six counts of aggravated sexual assault of a child. *See* TEX. PENAL CODE ANN. § 22.021 (Vernon Supp. 2009). The jury assessed punishment at ten years' confinement in the Texas Department of Criminal Justice—Institutional Division on each count, and the trial court ordered those sentences to run consecutively. In trial court cause number 07-CR-0775-D,[2] Trevino was convicted of two counts of indecency with a child. *See id.* § 21.11 (Vernon Supp. 2009). The jury assessed punishment at ten years' confinement on each count, and the trial court also ordered these sentences to run consecutively. Trevino filed a motion for new trial in both cases arguing ineffective assistance of counsel, which the trial court denied at a hearing on the motion. Trevino has appealed both cases to this Court.

We consider these companion appeals together. By three issues, which we have renumbered, Trevino argues that: (1) the trial court erred by denying his motion for a directed verdict on the charges of indecency with a child (trial court cause number 07-CR-0775-D); (2) the statute allowing cumulative sentences is unconstitutional (both causes); and (3) he received ineffective assistance of counsel (both causes). We affirm.[3]

## I. DIRECTED VERDICT

By his first issue, Trevino argues that the trial court erred by denying his motion for a directed verdict on the charges for indecency with a child. Specifically, Trevino argues that the indictment alleged that he touched V.N.'s genitals, while the evidence shows that he did not. We disagree.

---

[2] Appellate cause number 13-09-511-CR.

[3] As this is a memorandum opinion and the parties are familiar with the facts of the case, we will not recite them here except as necessary to advise the parties of this Court's decision and the basic reasons for it. *See* TEX. R. APP. P. 47.4.

## A.    Standard of Review

We treat a challenge to the denial of a motion for a directed verdict as a challenge to the legal sufficiency of the evidence. *See Williams v. State*, 937 S.W.2d 479, 482 (Tex. Crim. App. 1996). To assess whether the evidence supporting a verdict is legally sufficient, we consider all the evidence in the record in the light most favorable to the jury verdict and determine whether a rational jury could have found the defendant guilty of all the elements of the crime beyond a reasonable doubt. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979)); *Swearingen v. State*, 101 S.W.3d 89, 95 (Tex. Crim. App. 2003). We measure the legal sufficiency of the evidence by the elements of the offense as defined by a hypothetically correct jury charge. *Grotti v. State*, 273 S.W.3d 273, 280-81 (Tex. Crim. App. 2008).

The hypothetically correct jury charge in this case would have required the jury to find that: (1) on or about December 12, 2006 (Count 1) or December 15, 2006 (Count 2); (2) Trevino intentionally or knowingly; (3) engaged in sexual contact with V.N. by touching her genitals; (4) with the intent to arouse or gratify his sexual desire; and (5) V.N. was then a child younger than seventeen years old and not Trevino's spouse. *See* TEX. PENAL CODE ANN. § 21.11(a)(1), (c)(1); *see also Tovar v. State,* No. 13-08-00592-CR, 2010 WL 2783873, at *8 (Tex. App.–Corpus Christi July 15, 2010, no pet. h.) (mem. op., not designated for publication).

## B.    Analysis

Trevino points to testimony from V.N. on direct examination, which he asserts shows that he did not touch her genitals:

> [The State]:                    Was there a time that he touched other parts of

3

your body when he was staying with you when he wasn't supposed to be there?

[V.N.]: No.

[The State]: So he put his hand in your pants and he only did that one time?

[V.N.]: Yes.

[The State]: Was there a time that you had to sleep in the bed with him?

[V.N.]: Yes.

[The State]: Who was in the bed?

[V.N.]: My mom.

[The State]: And who else?

[V.N.]: And me and him.

[The State]: And how would y'all [sic] be sleeping?

[V.N.]: My mom would be in the middle. He would be on this side and I would be on the other side.

[The State]: And did he ever try to touch you when he was in bed with y'all [sic]?

[V.N.]: No. Well—

. . . .

No. Like [sic], in the morning, my mom would have to go to work and I would be—I will still be laying there and he would just move over and then—and then put his private in my butt and—or in my middle.

[The State]: And this was after you guys went to Mexico?

[V.N.]: Uh-huh, yes.

4

| | |
|---|---|
| [The State]: | So he would actually do those other things to you again? |
| [V.N.]: | Yes. |
| [The State]: | Did he ever touch any part of you with his hand? |
| [V.N.]: | Well, only the—to put his finger, only in my butt. That's it. |
| [The State]: | Okay. And he would only touch your butt with his hand, though? |
| [V.N.]: | Yes. |
| [The State]: | Okay. He never touched any other part of your body with his hand? |
| [V.N.]: | No. |

On cross-examination, V.N. further testified as follows:

| | |
|---|---|
| [Defense Counsel]: | Okay. You said that—that in the apartment after y'all [sic] got back from Mexico—that was when y'all [sic] were supposed to show up in court here, but y'all [sic] went to Mexico. Do you remember that? |
| [V.N.]: | Yes. |
| [Defense Counsel]: | That he—touched you on the butt? |
| [V.N.]: | Yes. |
| [Defense Counsel]: | And that's the only place he touched you, is that right? |
| [V.N.]: | And in my—um, yeah. |
| [Defense Counsel]: | Just in the butt, just on the outside of the butt? |
| [V.N.]: | Well, in. Like, [sic] he would go—he would put his hand in—in my pants and in my underwear. |
| [Defense Counsel]: | Okay. But the only place he touched you was on |

5

|                    | the butt?                          |
| ------------------ | ---------------------------------- |
| [V.N.]:            | Was on my butt.                    |
| [Defense Counsel]: | Okay.  And you're sure about that? |
| [V.N.]:            | Yes.                               |

While it is not entirely clear from his brief, it appears that Trevino argues that he can only be convicted of indecency with a child by contact if he touched V.N.'s genitals with his hand, and this testimony indicates that Trevino only touched V.N.'s "butt" with his hand. The State argues, and we agree, that sexual contact includes touching that is done with a part of the offender's body other than his hand.  Sexual contact is defined as "any touching of any part of the body of a child, including touching through clothing, with the anus, breast, or any part of the genitals of a person."  *See* TEX. PENAL CODE ANN. § 21.11(c)(2).  The Texas Court of Criminal Appeals has defined "touch" as "to put the hand, finger, or other part of the body on, so as to feel; to perceive by the sense of feeling." *Resnick v. State*, 574 S.W.2d 558, 559 (Tex. Crim. App. 1978).  V.N. testified that Trevino "put his private in my butt and—or in my middle."  We hold that this testimony is sufficient to allow a rational jury to find that Trevino touched V.N.'s genitals with his penis, which is "sexual contact" as defined by the indecency statute.  *See Trevino v. State*, 783 S.W.2d 731, 735 (Tex. App.–San Antonio 1989, no pet.) (holding that defendant "touched" victim's anus by engaging in anal intercourse).  Accordingly, we overrule Trevino's first issue.

## II. CUMULATIVE SENTENCES

By his second issue, Trevino argues that the trial court's judgment, cumulating his sentences, is unconstitutional because the cumulative sentence exceeds the punishment authorized by the jury on the individual counts.  Specifically, Trevino argues that the jury

assessed ten years' imprisonment for each of the eight counts; therefore, the jury must have intended for Trevino to serve only ten years in prison. The judgment cumulating the sentences, as allowed by section 3.03 of the Texas Penal Code, requires Trevino to serve eighty years in prison. *See* TEX. PENAL CODE ANN. § 3.03 (Vernon Supp. 2009). Trevino argues that cumulating sentences in this manner violates his right to a jury trial and to due process. *See* U.S. CONST. amends. V, VI, XIV.

The State points out that the Texas Court of Criminal Appeals has expressly rejected these precise constitutional challenges to the sentencing cumulation statute, and we are bound to follow its decision. *Barrow v. State*, 207 S.W.3d 377, 379 (Tex. Crim. App. 2006) (holding that the cumulation of sentences under section 3.03 does not violate the Sixth Amendment right to a jury trial or due process). Trevino neither acknowledges nor attempts to distinguish the controlling authority, which is directly contrary to his argument. We overrule Trevino's second issue.

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

By his third issue, Trevino argues that he received ineffective assistance of counsel. Trevino points to the following alleged failures by his trial counsel to support his claim: (1) counsel failed to investigate potential witnesses; (2) counsel failed to hire an expert witness to testify that the lack of any physical trauma to V.N. was significant; (3) counsel failed to strike a juror who previously worked for the Texas Department of Family and Protective Services; (4) counsel failed to object when the State's experts testified that V.N.'s claims were truthful; (5) counsel failed to object to improper jury argument in both the guilt/innocence and punishment phases of trial; (6) counsel failed to object to the State's inflammatory arguments to the trial court regarding Trevino's nationality and cumulating the

7

sentences; and (7) counsel improperly injected Trevino's nationality into the trial. We will address each argument in turn.

## A.     Standard of Review and Applicable Law

We apply the two-pronged *Strickland* analysis to determine whether counsel's representation was so deficient that it violated a defendant's constitutional right to effective assistance of counsel. *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005); *Jaynes v. State*, 216 S.W.3d 839, 851 (Tex. App.–Corpus Christi 2006, no pet.); *see Strickland v. Washington*, 466 U.S. 668, 684 (1984). An appellant claiming a *Strickland* violation must establish that "(1) his attorney's representation fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for his attorney's errors, the result of the proceeding would have been different." *Jaynes*, 216 S.W.3d at 851; *see Strickland*, 466 U.S. at 687. We afford great deference to trial counsel's ability—"an appellant must overcome the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." *Jaynes*, 216 S.W.3d at 851. The appellant must prove both elements of the *Strickland* test by a preponderance of the evidence. *Munoz v. State*, 24 S.W.3d 427, 434 (Tex. App.–Corpus Christi 2000, no pet.).

Typically, a silent record that provides no explanation for counsel's actions will not overcome the strong presumption of effective assistance. *Rylander v. State*, 101 S.W.3d 107, 110-11 (Tex. Crim. App. 2003). In this case, however, Trevino filed a motion for new trial, and the trial court held a hearing on his ineffective assistance claims. We review the trial court's ruling on a motion for new trial for an abuse of discretion. *Charles v. State*, 146 S.W.3d 204, 208 (Tex. Crim. App. 2004); *My Thi Tieu v. State,* 299 S.W.3d 216, 223 (Tex.

8

App.–Houston [14th Dist.] 2009, pet. ref'd). We afford almost total deference to a trial court's determination of the historical facts and of mixed questions of law and fact that turn on an evaluation of the credibility and demeanor of the witnesses. *Kober v. State*, 988 S.W.2d 230, 233 (Tex. Crim. App. 1999). Where the trial court has not made explicit findings of fact, as in this case, we will imply all findings necessary to support the ruling "when such implicit factual findings are both reasonable and supported in the record." *Johnson v. State*, 169 S.W.3d 223, 239 (Tex. Crim. App. 2005).

## B. Reasonable Investigation of Witnesses

Trevino argues that because there was no medical evidence in this case, the entire case rested on the credibility of Trevino and V.N. Trevino claims that he suggested to his trial counsel that friends and family members could testify as to V.N.'s tendency to tell lies, the living arrangements of the parties, his lack of opportunity to commit the offense, and his general character and behavior around children and V.N. Specifically, Trevino argues that the following witnesses could have provided relevant testimony but were not called:

- B.G., who was V.N.'s mother, Veronica Garza, and Claudia Trevino were available and willing to testify about Trevino's character, that Trevino did not have the opportunity to commit the crimes, that V.N. is manipulative, and that V.N.'s father did not like Trevino;

- Maria Gomez was available and willing to testify that Trevino lacked the opportunity to commit the crimes and to his character;

- V.N.'s brother could have testified regarding V.N.'s credibility, Trevino's character, and V.N.'s father's influence on her.

Trevino argues that these witnesses would have allowed the jury to see that Trevino was a devoted father, a hard worker, and a good candidate for probation.

At the hearing on the motion for new trial, Trevino's trial attorney testified that he

hired an investigator, who interviewed all of the witnesses Trevino suggested and relayed the substance of what those witnesses would say at trial back to him. Trevino's attorney testified that, after speaking to them at length about their possible testimony, he decided not to call the witnesses Trevino proposed because "they would not help us in the case, especially [B.G.] would not help us." He explained that none of the witnesses could provide relevant testimony as to V.N.'s credibility, and testimony about the influence of V.N.'s father "wasn't what it was reported to be." Although he conceded that these witnesses may have been able to provide character evidence favorable to Trevino, none could provide damaging character evidence against V.N., which he believed was the relevant issue. Furthermore, Trevino's attorney testified that the witnesses were "wishy-washy about where they were" and "whether they were present at the time that the offenses were committed," and therefore, he believed they could not provide significant testimony about Trevino's opportunity to commit the crimes.

An attorney's strategic decision to not call a witness will be reviewed only if there was no plausible basis for not calling the witness, and the failure to call witnesses whose testimony is of marginal benefit does not amount to ineffective assistance of counsel when the totality of counsel's representation was acceptable. *See Velasquez v. State*, 941 S.W.2d 303, 310 (Tex. App.–Corpus Christi 1997, pet. ref'd); *Ordonez v. State*, 806 S.W.2d 895, 900 (Tex. App.–Corpus Christi 1991, pet. ref'd). In this case, the trial court was presented with a plausible basis for trial counsel's refusal to present these witnesses—namely, that their testimony was not what it was represented to be and would not be helpful. The trial court's implied determination that a plausible trial strategy was

implemented is supported by Trevino's attorney's testimony and entirely reasonable, and accordingly, was not an abuse of discretion. *Johnson*, 169 S.W.3d at 239.

## C.    Failure to Retain Experts

Trevino argues that his counsel was ineffective in failing to retain an expert witness "to explore the significance of the lack of any physical trauma" to V.N.   Sexual Assault Nurse Examiner Elizabeth Andleman testified that there was no evidence of physical trauma to V.N., but she further testified that such evidence will not always be present even if abuse has occurred.   Trevino testified at the motion for new trial hearing that he had asked his attorney about hiring an expert to refute the nurse's testimony.   The State argues, among other things, that to complain of ineffective assistance by failing to call an expert witness, the defendant must first show that the expert would have testified in a manner beneficial to him. *See Cate v. State*, 124 S.W.3d 922, 927 (Tex. App.–Amarillo 2004, pet. ref'd); *Teixeira v. State*, 89 S.W.3d 190, 194 (Tex. App.–Texarkana 2002, pet. ref'd). We agree.   Trevino does not point to any evidence in the record demonstrating that an expert witness actually would have testified on his behalf and that the testimony would have been beneficial.   Accordingly, we reject this argument.

## D.    Objection to Veniremember

Trevino next argues that during voir dire, his attorney learned that a veniremember had previously been employed by Child Protective Services as an investigator in the sexual abuse unit.  Trevino argues that he informed his attorney that he did not want that person on the jury, and both agreed to use a peremptory strike.   Trevino's attorney, however, failed to strike her, and she ultimately became the foreperson of the jury.  At the hearing

11

on the motion for new trial, Trevino's attorney conceded that he "fully intended to strike that juror and indicated so on [his] seating chart, and it was so full of red marks there that when it came time to make strikes[,] I just overlooked her. That was a mistake on my part." He conceded that his failure to strike the juror was not trial strategy.

The State counters that, among other things, Trevino has failed to prove prejudice. We agree. Trevino does not explain how a person's previous employment for child protective services would affect his or her judgment on his guilt. *See* TEX. R. APP. P. 38.1(i). While it is possible that a former child protective services worker would be biased against an a person accused of crimes against children, that is not necessarily the case. As the State points out, the veniremember testified that her prior employment would not affect her service as a juror, and that she could put aside all she had learned and decide the present case solely on the evidence presented. *See Lopez v. State*, 79 S.W.3d 108, 113 (Tex. App.–Amarillo 2002, no pet.) (presuming that jurors follow the trial court's instructions and only consider the evidence in the case). On this record, we hold that Trevino has failed to show that his counsel's failure to strike the veniremember constituted ineffective assistance of counsel.

### E. Failure to Object to Testimony Regarding V.N.'s Truthfulness

Trevino argues that his counsel was ineffective by failing to object to testimony from two witnesses, a nurse and a forensic interviewer, who he claims offered opinions that V.N. was telling the truth. The State argues that the testimony on which Trevino relies does not constitute an opinion on V.N.'s credibility; thus, had his attorney objected, the trial court would not have abused its discretion in overruling the objection. Again, we agree with the

State.

In order to show ineffective assistance of counsel for the failure to object to the admission of evidence, the defendant must show that, had the objection been lodged, the trial court would have erred by overruling it. *See Ex parte White,* 160 S.W.3d 46, 53 (Tex. Crim. App. 2004). Expert testimony that a child exhibits symptoms consistent with sexual abuse does not constitute an opinion on the child's truthfulness. *See Schutz v. State*, 957 S.W.2d 52, 73 (Tex. Crim. App. 1997); *Hitt v. State*, 53 S.W.3d 697, 707 (Tex. App.–Austin 2001, pet. ref'd); *see also Rushing v. State,* No. 09-08-00396-CR, 2010 WL 2171628, at *5 (Tex. App.–Beaumont May 26, 2010, no pet.) (mem. op., not designated for publication).

Trevino first argues that the following testimony from Nurse Andleman constituted an opinion on V.N.'s credibility. The testimony occurred in the context of explaining that there was no physical evidence of a sexual assault on V.N.:

| [The State]: | What is the percentage of those children that you have examined that you actually find some sort of trauma in their sexual organ or in their anus when they've given this type of history? |
|---|---|
| Andleman: | Very unlikely to find it. |
| [The State]: | Can you explain to the jury why that might be? |
| Andleman: | There are a lot of reasons why, especially in children. When it's a stranger with the child, someone that doesn't really care about the child, they don't care if they hurt them or what they might leave behind, but when it's someone who knows the child—and usually with this kind of sexual abuse, it is someone who knows the child; it's not a stranger—they want access to the child over and over again. So if they hurt them, the child has more of a chance of saying to stop or to tell, where [sic] than if they don't hurt them or they make it a game, they will be able to have access over and over |

13

again.

. . . .

[The State]: And even with the history that [V.N.] gave, that these things had happened more than one time, would this finding that you had still be indicative that the history given was what it was?

Andleman: Yes.

. . . .

[The State]: Now, [defense counsel] asked about the examination and whether or not it yielded any—any actual evidence that she had been sexually abused. Did it disprove that she had been sexually abused?

Andleman: No, ma'am.

[The State]: And is that because typically you do not find trauma in these cases?

Andleman: That's correct.

Next, Trevino points to testimony from Ricardo Jimenez, a forensic examiner at the

Children's Advocacy Center:

[The State]: And Mr. Jimenez, when you are interviewing a child, what are some of the things you look for in terms of whether or not a child is giving information that is consistent with abuse?

[Jimenez]: Well, the most—I mean, the thing you look for most in these cases is the details that they're providing, if they're able to tell you what happened, seeing appropriate emotions, the type of wording that they're using, as well, things they should know, things they shouldn't know. Those are the things you look for, the details.

[The State]: And in [V.N.]'s video, did she give you details about what her—what the defendant did to her?

14

| [Jimenez]: | Yes, ma'am. |
|---|---|
| [The State]: | And was she able to describe how those things happened and what it felt like? |
| [Jimenez]: | Yes, ma'am. |

Nowhere in this testimony do Andleman or Jimenez offer a direct opinion on V.N.'s truthfulness; rather, Andleman and Jimenez merely testified that V.N. exhibited symptoms consistent with sexual abuse, which is admissible evidence. *See Schutz*, 957 S.W.2d at 73; *see also Rushing,* 2010 WL 2171628, at *5. Had Trevino's attorney objected, the trial court would not have abused its discretion in overruling the objection; therefore, Trevino has not established ineffective assistance of counsel on this basis.

## F.     Failure to Object to Improper Jury Argument

Trevino argues that his counsel was ineffective in failing to object to the State's improper jury argument during both phases of his trial. We disagree. Permissible jury argument generally falls into one of four areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) an answer to the argument of opposing counsel; or (4) a plea for law enforcement. *Berry v. State,* 233 S.W.3d 847, 859 (Tex. Crim. App. 2007). If the State's closing argument was proper, Trevino's counsel was not deficient by failing to object. *See White*, 160 S.W.3d at 53.

### 1.     Guilt-Innocence Phase Closing Argument

Trevino argues that his counsel failed to object to the following statement during the State's closing argument:

> [K]ids do not have the ability to describe sexual encounters unless they've experienced them. . . . Where would she have gotten that knowledge, if it didn't happen to her?

15

. . . .

Is it reasonable that these children can come in and give you such graphic details about sexual encounters they had and it not be true?

Trevino claims that the State's argument inserted new facts into evidence and implied that there has "never been a false allegation of sexual abuse."

Trevino's interpretation of the record, however, is incorrect. As noted above, Jimenez testified that when he interviews a sexual abuse complainant, he looks for details and "things they should know, things they shouldn't know." The State pointed to V.N.'s testimony describing the details of her assault and argued that she should be considered a credible witness, which is a reasonable deduction from the evidence. *See Andujo v. State*, 755 S.W.2d 138, 144 (Tex. Crim. App. 1988) (holding that an attorney will be afforded wide latitude in closing argument "so long as his argument is supported by the evidence and offered in good faith") (quoting *Griffin v. State*, 554 S.W.2d 688, 696 (Tex. Crim. App. 1977)). Because the State's argument was within the bounds of acceptable argument, Trevino's counsel was not ineffective for failing to object. *See White*, 160 S.W.3d at 53.

### 2. Punishment Phase Closing Argument

Trevino next argues that at the close of the punishment phase of trial, the State argued to the jury that "[s]exual abuse is a soul-killer" and "probation . . . is a Judeo-Christian concept that deals with atonement . . . making up for what you've done wrong." The State later argued that "community supervision allows them to walk around just like you and I, some restrictions, but who's really to monitor that? The defendant himself. Because there's not somebody walking around with him [twenty-four] hours a day."

16

Trevino argues that this argument is not based on any evidence in the case.

A plea for law enforcement may include an argument regarding the relationship between the jury's verdict and the deterrence of specific crimes or crime in general. *Borjan v. State*, 787 S.W.2d 53, 55 (Tex. Crim. App. 1990). The State may also remind the jury of the effect that its verdict may have on the community. *Id.* at 56. The comment that sexual abuse is a "soul-killer" is a proper plea for law enforcement because it is a description of the effect that the crime has on the community. *See id.* Likewise, the prosecutor's discussion of community supervision is also a plea for law enforcement that informs the jury of the effect of its decision to impose jail time instead of probation. *See id.*; *see also Schilling v. State*, No. 04-08-00591-CR, 2009 WL 2778667, at *3 (Tex. App.–San Antonio Sept. 2, 2009, pet. ref'd) (mem. op., not designated for publication) (noting, in dicta, that prosecutor's comment that probation is a "joke" was a proper plea for law enforcement); *Thiboult v. State,* No. 2-06-449-CR, 2008 WL 45757, at *5 (Tex. App.–Fort Worth Jan. 3, 2008, pet. ref'd) (mem. op., not designated for publication) (holding that a prosecutor's comments that "[y]ou give him probation, you could walk out of the courtroom with him" and "[g]et on the elevator with him; you can follow him home" were not improper). Because the arguments were proper, trial counsel's failure to object did not constitute ineffective assistance.

## G.      Argument to the Trial Court Regarding Cumulative Sentences

Trevino argues that his attorney failed to object to what he calls "inflammatory argument" that the State made to the trial court. After the jury was discharged, the State argued to the trial court that Trevino's sentences should be cumulated:

You heard the testimony of the victim. . . .[She] suffered tremendously at the hands of this defendant, Judge. You heard her describe in graphic detail what she had to endure at his hands. But not only that, Your Honor, you know that this child was taken from the jurisdiction of the court to avoid his trial the first time that we were called to jury trial. The defendant testified that he actually brought [B.G.] a car. That car was probably used to leave to Mexico with the child. He also testified, Your Honor, that he had entered this country illegally. If his sentences concurrently [sic] and even—say he does do the [ten] years, there is nothing to prevent this defendant from then coming back, if he is deported to Mexico, back into this country illegally and being around children in our community. And for those reasons, I am asking that you consider running each of these counts consecutively.

Trevino calls this argument "inflammatory," but he does not cite a single case that supports his argument that trial counsel can be held ineffective for failing to object to statements made by the State to the trial judge outside the presence of the jury, particularly where the trial court has broad discretion to grant the relief that the State is requesting. *See* Tex. Penal Code Ann. § 3.03. The trial court heard all the testimony in the case and was perfectly capable of ferreting out what ruling was supported by the evidence, and we will not presume that a trial court was improperly swayed by "inflammatory" argument, if any. *See Lopez v. State*, 725 S.W.2d 487, 490 (Tex. App.–Corpus Christi 1987, no pet.) ("[T]he trial court was sitting as trier of fact and was quite capable of disregarding any improper argument, and will be presumed to have done so."). Accordingly, we reject Trevino's argument.

Furthermore, Trevino argues that his trial counsel improperly injected his nationality as an issue in the case. On direct examination by his attorney, Trevino testified that he entered the United States illegally, but he qualified for amnesty and became a permanent resident. The State argues that this testimony was admitted as part of trial counsel's development of Trevino's life history, which is plausible trial strategy because his counsel

18

could have been trying to be candid about his client's shortcomings in order to build credibility with the jury. *See Martin v. State*, 265 S.W.3d 435, 446 (Tex. App.–Houston [1st Dist.] 2007, no pet.). Trevino did not question his attorney at the hearing on the motion for new trial regarding the reason his attorney introduced Trevino's nationality at trial. Given that this could be a plausible trial strategy, on this record, we cannot say that Trevino's counsel was ineffective. *Rylander*, 101 S.W.3d at 110-11.

Having rejected all of Trevino's arguments, we overrule his second issue.

## IV. CONCLUSION

Having overruled all of Trevino's issues, we affirm the trial court's judgments.

_____
GINA M. BENAVIDES,
Justice

Do not publish.
*See* TEX. R. APP. P. 47.2(b).

Delivered and filed the
19th day of August, 2010.